## THOMAS J. RICHARDSON *et al.*

*v.*

## THE PEOPLE, for the use of John W. Dugger.

1. CONSERVATOR'S BOND—*right of action in successor.* Where a conservator of an idiot, on his removal from office and settlement with the court, is ordered to pay over the balance in his hands to his successor, and the latter is also removed before the money is paid, and another person appointed in his place, the latter may maintain an action on the bond of the first for non-payment. The latter is authorized by the law to receive the money.

2. SAME—*who may approve bond.* Under the act of 1851 giving county courts jurisdiction over the estates of idiots, etc., the county court, or judge thereof, is authorized to take and approve a conservator's bond.

3. SAME—*presumption when the judge approving and surety's name are the same.* Where the name of the county judge who approves a conservator's bond and that of the surety are the same, it will not be presumed that they were one and the same person from the identity of their names.

4. SAME—*bond not filed.* It is no objection to a recovery on a conservator's bond that it was not filed by the clerk until after the conservator's removal. Its delivery to the clerk is sufficient.

5. SAME—*people may be obligee.* A conservator's bond made payable to the people of the State of Illinois, instead of to the county treasurer as directed by statute, is good and valid as a common law obligation, and may be enforced by suit in the name of the people for the use of the proper person.

6. The people of the State of Illinois, in their aggregate or corporate capacity, may be an obligee or payee, and the instrument thus given enforced in our courts, where it is not prohibited by statute, and does not contravene a sound public policy.

7. CONTRACTS—*language construed most strongly against obligor.* Where a party, entering into a bond or undertaking, employs equivocal expressions or language that will bear two constructions, they will be construed against him.

APPEAL from the Circuit Court of Clinton county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. MURRAY & ANDREWS, for the appellants.

Mr. G. VAN HOOREBEKE, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of debt, brought on a conservator's bond, to recover money received by the principal obligor, belonging to an idiot. The declaration avers Morgan, the principal in the bond, was, on the 19th day of January, 1864, appointed conservator of one Watkins, by the county court of Clinton county, and that he, and George M. Richardson as his surety, executed the bond declared on, to the People of the State of Illinois. It is averred that the bond was approved by the county judge and delivered to the county clerk; that Morgan entered upon the discharge of his duties of conservator; that, as such conservator, he received money belonging to the idiot, to the amount $500; that he was removed as conservator by the county court, and one Kile was appointed conservator of Watkins; that he was subsequently removed, and John W. Dugger was appointed conservator. It is averred that, on the removal of Morgan, he came to a settlement, when it was found that there was in his hands, money belonging to Watkins, $250.36, which he was ordered to pay over to his successor; that he had neither paid it to Kile nor Dugger, or any part thereof; that Richardson had died, leaving all the defendants but Morgan his heirs and devisees.

Defendants demurred to the declaration, but the demurrer was overruled, and, defendants failing to plead, judgment was rendered on the demurrer, against defendants, and they appeal to this court.

The objections urged against the judgment are technical, and we shall consider only such as seem to have force or plausibility. It is, first, urged that the order of the probate court to pay over the money to Morgan's successor, gave to Kile, but not to Dugger, a right of action. Had Morgan paid the money to Dugger, there can be no question that he would have been fully discharged and protected, because Dugger, as the conservator of Watkins, by virtue of his appointment to the place, was entitled to have the money, and, having that right conferred by law, he had the right to sue and recover.

He was a successor of Morgan, in the spirit, if not in the language, of the order. It is said Morgan's bond should have been approved by the circuit court, and, for the want of such approval, it was void.

The 5th section of the act of 1851 (Sess. Laws, p. 96,) confers upon county courts jurisdiction in cases arising under chapter 50 of the Revised Statutes of 1845; and it provides that such courts and judges may proceed in the same manner and with like effect as circuit courts or judges thereof. Under this section, the county judge had as ample power to approve the bond as the circuit judge could under the 2d section of that chapter.

It is next urged that the bond was approved by George M. Richardson, who was both county judge and surety on the bond. Even if this appeared from the declaration, which it does not, and it constituted an objection, it fails to appear that the judge and surety are one and the same person. For aught that appears, there may have been two persons of the same name—one acting as judge and the other signing as surety; and we will not presume that there was but one, and he was the judge and surety.

And again, the declaration avers that the bond was approved by the county judge, without stating who was such judge.

It is urged that the copy of the bond filed with the declaration shows that the bond was not filed until after Morgan was removed as conservator. It is a full answer to say, the statute does not require the bond to be filed; and a delivery of the bond to the county clerk would be sufficient, whether filed or not by him, as the idiot could not compel it to be done, and should not be prejudiced by its omission. A delivery to the payee, or to some one for him, constitutes a sufficient delivery. We can look alone to the declaration, and it avers that it was delivered at the time it was executed. The declaration was amended so as to show that fact, and we suppose on the objection of appellants' counsel.

It is objected that, as the law in force at the time the bond was executed required it to be made payable to the county

treasurer, and as it was payable to the people of the State of Illinois, it is absolutely void, as being made without authority. That the people, in their aggregate or corporate capacity, may be an obligee or payee, and the instrument thus given enforced in our courts, we think, does not admit of doubt. A party, for a proper consideration, may bind himself to the State as effectually as to an individual. Suppose a collector or treasurer, or other public officer or private individual, were to obtain money belonging to the State, and fail to account for it, and on settlement, independent of all statutory provisions, were to give a bond or note to the people of the State of Illinois for its payment, could there be the shadow of a doubt that the instrument would be valid and binding, or that the State might recover by the name used as obligee or payee? Or, suppose an individual should convey real estate to the State, and covenant for title, and it were to fail, can any one doubt that the people might maintain covenant on the breach of warranty? Many other cases might be supposed, where there could be no doubt, although not authorized or required by statute, an obligation made to the people might be enforced in their name. We do not have the slightest doubt that "The People of the State of Illinois" is such an entity, in its aggregate or corporate capacity, as to be made an obligee or payee, for all lawful purposes, when not prohibited by statute.

Here, the county judge was pursuing a lawful purpose. He was attempting to perform a duty imposed by statute. He, for a want of knowledge of his duty, took the bond payable to the people of the State of Illinois, instead of to the county treasurer. Shall it be said that this helpless idiot shall be despoiled of his property, of the care and management of which he is utterly incapable, by the non-performance of such a duty by officers of the law? Surely not, where no law is violated and public policy is not contravened. The obligee in such a bond is only nominal, and is given to another person because the idiot, lunatic or distracted person is mentally incapable of being the obligee. Had this bond been executed to a private individual, capable of contracting for the use of the

idiot, it would not have violated any law or been opposed to public policy, and no reason is perceived, nor has any been suggested, why a recovery could not be had on it, on a breach of the condition, and the same is true where the State is the obligee.

But it is said that, by being payable to the people, it is in their several, and not their aggregate, capacity, and, the obligors being two of the entire number of the people, the obligation is to themselves as well as to all the rest of the people. The obligation will not fairly bear such a construction, but if it would, it will surely, also, bear the construction that it is to the people in their aggregate capacity, and the language employed by the obligor will be most strongly construed against him. He will not be permitted to escape liability because he has employed equivocal expressions, or language that will bear two constructions—one favorable and the other unfavorable to him.

It was held in *Coons* v. *The People*, 76 Ill. 383, that, where a collector, by virtue of a bond not in the form required by the statute, obtained money, he and his sureties were estopped from denying its validity, if it were a good common law bond, unless it was prohibited by sound public policy. As the collector obtained control of the tax fund, received commissions under the bond, and as the bond was not prohibited by statute or opposed to public policy, it was held to be obligatory. That case referred to *Pritchett* v. *The People*, 1 Gilm. 525, and *The People* v. *Johr*, 22 Mich. 461, as announcing the same rule. The case of *Supervisors* v. *Coffinbury*, 1 Mich. 355, holds that a bond given by the treasurer of a county, for the faithful performance of his official duties, to the board of supervisors of the same county, is a good and valid bond, notwithstanding there was no statute requiring such a bond to be given. That case holds the bond good at common law. Reference might be made to numerous other cases were it deemed necessary, but those referred to illustrate the rule and its application.

Here, Morgan obtained the idiot's money and appropriated

it to his own use. He was enabled to do so, alone, by this bond, and by Richardson becoming his surety, and it would be monstrous to permit him to hold it by interposing mere technicalities, that should not have any weight, to prevent its recovery. By holding it a good common law bond, no statute, rule of law or sound public policy is violated, but it is in accordance with our former decisions, and those of other courts whose decisions are entitled to the highest consideration.

We have not the slightest doubt, both on principle and precedent, that this is a good common law bond, and that the court below decided correctly in overruling the demurrer and rendering judgment for the sum it did, and it must be affirmed.

*Judgment affirmed.*